Sealed
Public and unofficial staff access to this instrument are prohibited by court order.

UNSEALED PER ARREST
8/7/2014

APR 0 9 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| v. | § | CRIMINAL NO. **14-154** |
| KATHLEEN CREEL | § § | |

### INDICTMENT

THE GRAND JURY CHARGES:

### COUNTS ONE—TEN
(18 U.S.C. § 1343 – Wire Fraud)

### Introduction

At all times material to this indictment:

1. Wilhelmsen Ships Service, Inc. was a maritime services company based in Norway. In or about 2005, Wilhelmsen bought Unitor Ships Service, Inc., a maritime company based in the Houston Division of the Southern District of Texas, and Unitor's operations continued under the Wilhelmsen name. References to "Wilhelmsen" include both Unitor Ships Service and Wilhelmsen.

2. Defendant **KATHLEEN CREEL** was a resident of Harris County, Texas and was employed by Wilhelmsen in the accounting department. In or about 2005, defendant **CREEL** was promoted to Customs and Tax Manager. In this position, the defendant's job responsibilities included processing invoices submitted by Wilhelmsen vendors and ensuring that vendors were paid for services and products

they provided. Defendant **CREEL** had access to sensitive financial information, including billing records and bank account information for Wilhelmsen vendors. Defendant **CREEL** also had access to Wilhelmsen bank accounts and the ability to cause Wilhelmsen to make payments to vendors.

3. Vendor A was a Dallas-based company that provided chemical supplies to Wilhelmsen. Vendor B was an Illinois-based company that provided shipping and freight inspection services to Wilhelmsen. Defendant **CREEL** was in charge of the Wilhelmsen accounts for both Vendor A and Vendor B.

4. In her position as a member of the accounting department and Customs and Tax Manager, defendant **CREEL** was responsible for entering invoices from Vendor A and Vendor B into Wilhelmsen's accounting system, processing these invoices, and causing Wilhelmsen to pay these invoices through either check or wire transfer.

5. Unbeknownst to Vendor A or Wilhelmsen, defendant **CREEL** maintained a Washington Mutual Bank (WaMu) checking account, ending in -2245, with an account name similar to Vendor A. Defendant **CREEL** also maintained a WaMu account ending in -9102. Both accounts were located in the Southern District of Texas.

## The Scheme

6.    Beginning in at least June 2003, the exact date being unknown, and continuing through in or about August 2009, the defendant

**KATHLEEN CREEL**

did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by false and fraudulent pretenses, representations and promises, to wit: defendant **CREEL** embezzled money from Wilhelmsen by submitting false invoices in the name of Vendor A and Vendor B, processing those invoices for payment, and causing Wilhelmsen to make payments totaling over $4,000,000 by check or wire transfer to bank accounts secretly controlled by **CREEL**.

## Manner and Means of the Scheme

Among the manner and means by which the defendant sought to accomplish and did accomplish the purpose of the scheme to defraud were:

7.    Defendant **CREEL** would and did create and submit false invoices, made to look like they came from Vendor A or Vendor B, for services or supplies rendered to Wilhelmsen.

8.    Defendant **CREEL** would and did process these false invoices through Wilhelmsen's accounting system, causing those invoices to be approved for payment.

9. From in or about 2003 through in or about 2005, defendant **CREEL** would and did cause Wilhelmsen checks to be issued to Vendor A and mailed to a Post Office Box that she controlled. Defendant **CREEL** would and did deposit those checks into her WaMu account ending in -2245.

10. Defendant **CREEL** would and did change the payment information fields in Wilhelmsen's accounting database so that payments intended for Vendor A and Vendor B would go to bank accounts controlled by the defendant.

11. From in or about 2005 through in or about 2009, defendant **CREEL** would and did cause payments to be made by Automated Clearing House (ACH) wire transfer from Wilhelmsen's New York-based bank account into her WaMu accounts ending in -2245 and -9102, located in the Southern District of Texas.

12. In or about June 2008, defendant **CREEL** would and did cause wire transfer payments to be made from Wilhelmsen's New York-based bank account into the bank account of a personal friend of the defendant, located in the Southern District of Texas.

### Execution of the Scheme

13. On or about the dates listed below, in the Houston Division of the Southern District of Texas, and elsewhere, for the purpose of executing the scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and intending to do so,

4

defendant **CREEL** knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce the electronic communications set forth in the Counts below:

| COUNT | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 1 | April 30, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $23,885.00 |
| 2 | May 14, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $33,315.00 |
| 3 | May 21, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $22,100.00 |
| 4 | June 4, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $24,135.00 |
| 5 | June 11, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $25,600.00 |
| 6 | July 23, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $33,804.95 |
| 7 | August 6, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $14,490.21 |
| 8 | August 13, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $31,081.52 |
| 9 | August 20, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $50,298.57 |
| 10 | August 27, 2009 | ACH Payment to Washington Mutual Bank account controlled by **CREEL** and ending in -9102 | $23,255.92 |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendant

### KATHLEEN CREEL

that in the event of her conviction of the offenses charged in Counts One through Ten of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

### Money Judgment

Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

### Substitute Assets

Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of defendant,

   (A) cannot be located upon the exercise of due diligence;

   (B) has been transferred or sold to, or deposited with, a third party;

   (C) has been placed beyond the jurisdiction of the court;

6

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the total value of such property pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 28, United States Code, Section 2461(c).

                        Original Signature on File

                        FOREPERSON OF THE GRAND JURY

KENNETH MAGIDSON
United States Attorney

By: _____
John P. Pearson
Assistant United States Attorney
(713) 567-9324